# 14-42

IN THE

# United States Court of Appeals
## FOR THE
## Second Circuit

AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; NEW YORK CIVIL LIBERTIES UNION; and NEW YORK CIVIL LIBERTIES UNION FOUNDATION,

*Plaintiffs–Appellants*,

— v. —

JAMES R. CLAPPER, in his official capacity as Director of National Intelligence; MICHAEL S. ROGERS, in his official capacity as Director of the National Security Agency and Chief of the Central Security Service; ASHTON B. CARTER, in his official capacity as Secretary of Defense; LORETTA E. LYNCH, in her official capacity as Attorney General of the United States; and JAMES B. COMEY, in his official capacity as Director of the Federal Bureau of Investigation,

*Defendants–Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

Christopher T. Dunn
Arthur N. Eisenberg
New York Civil Liberties Union
    Foundation
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
Fax: (212) 607-3318
aeisenberg@nyclu.org

Jameel Jaffer
Alex Abdo
Patrick Toomey
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
jjaffer@aclu.org

## Table of Contents

Table of Authorities ................................................................................................. ii

Introduction ..............................................................................................................1

    I.     This case is not moot now, and the government has not established that the case will become moot at any definite point in the future. ...........2

    II.    The call-records program is illegal. ...........................................................4

    III.   Preliminary relief is appropriate now. .......................................................8

Conclusion ..............................................................................................................10

i

# Table of Authorities

**Cases**

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) ..................................4

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ...................................................5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167 (2000)..................................................................................................................4

*N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) ........................8

*Natural Res. Def. Council v. Muszynski*, 268 F.3d 91 (2d Cir. 2001) ......................5

*Rubin v. United States*, 449 U.S. 424 (1981) ..............................................................5

*Sovereign News Co. v. United States*, 690 F.2d 569 (6th Cir. 1982).......................10

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010)..................................................................................................................10

*United States v. David*, 131 F.3d 55 (2d Cir. 1997) .................................................10

*United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014)..............................................10

**Statutes**

50 U.S.C. § 1842......................................................................................................7

50 U.S.C. § 1861 .............................................................................................. 1, 4, 5, 7

USA FREEDOM Act of 2015, Pub. L. No. 114-23, 129 Stat. 268.................. passim

**Other Authorities**

Alex Byers & Kate Tummarello, *What Happens If the PATRIOT Act Expires?*, Politico (May 21, 2015)......................................................................7

H. Rep. No. 114-109 (2015) ................................................................................5

James Comey, Dir., Fed. Bureau of Investigation, Remarks at the Georgetown University Law Center's Third Annual Cybersecurity Law Institute (May 20, 2015) ............................................................................6

PCLOB, *Report on the Telephone Records Program Conducted under Section 215 of the USA PATRIOT Act and on the Operations of the Foreign Intelligence Surveillance Court* (Jan. 23, 2014) .....................................3

**Introduction**

Plaintiffs seek narrow but important preliminary relief to mitigate the ongoing harm caused by the government's bulk collection of their call records under 50 U.S.C. § 1861—bulk collection that this Court has already held to be unlawful. Plaintiffs have shown that they are likely to succeed on the merits, that they are currently suffering irreparable injury, and that the public interest and balance of equities decisively favor the preliminary relief they seek.

The government argues that the USA FREEDOM Act of 2015, Pub. L. No. 114-23, 129 Stat. 268 (hereinafter "USA Freedom Act"), authorized bulk collection to continue for 180 days, but the text the government cites is the same text that this Court has already held does not permit bulk collection. The legislative history and statutory structure relied on by the government could not overcome that unambiguous text even if they clearly conflicted with it, which they do not. Moreover, even if the statutory text were ambiguous, the government's construction of it would be foreclosed by the doctrine of constitutional avoidance.

There is no merit to the government's argument that the Court should permit bulk collection to continue out of deference to the "compromise" struck in the USA Freedom Act. The argument assumes that Congress intended to permit bulk collection to continue, but this is precisely what Plaintiffs dispute. In any event, even if one assumes that Congress intended bulk collection to continue, there is no

1

warrant for this Court to subordinate Plaintiffs' *constitutional* rights to a legislative compromise.

Nor, finally, is there merit to the government's suggestion that preliminary relief would interfere unduly with legitimate government interests. At this stage, Plaintiffs seek only narrow relief: an injunction against the bulk collection of their call records, a quarantine of their call records that have already been collected, and a prohibition on the use of their phone numbers or identifiers to query the call-records database. This relief would mitigate Plaintiffs' ongoing injuries, and there is no serious argument that it would undermine the government's ability to track the communications of suspected terrorists.

**I.  This case is not moot now, and the government has not established that the case will become moot at any definite point in the future.**

The government concedes that this case is not moot because it intends to continue collecting, storing, and querying Plaintiffs' call records until at least November 29, 2015. *See* Gov't Suppl. Br. 5, 12–14. It argues, however, that the case will become moot at some future point. The possibility that the case may eventually become moot is no basis for ignoring the ongoing harm to Plaintiffs, but, in any event, the government has not established that this case will become moot at any definite point in the future.

First, the government does not say with any clarity *when* its purge will take place. The government's only statement on this point comes not in a sworn

2

declaration but in a press release, and the press release indicates only that the government will purge "historical metadata . . . as soon . . . as possible" after expiration of litigation-preservation obligations. Gov't Suppl. Br. 13. The government does not explain what it means by "as soon . . . as possible" in this context. Nor does it explain why its obligation to preserve records related to ongoing litigation requires it to retain indefinitely *all* of the records it has collected.

Second, the government does not say *which* records it intends eventually to purge. The government stores at least two sets of call records acquired under the program. The first set comprises *all* of the call records collected by the government under the program. *See* JA129–130. The second set (which may be stored across multiple databases) comprises the subset of call records returned as query results. *See* JA136–137. The government does not mention this second set of records in its brief, but it is undoubtedly substantial because it includes not only the call records of the government's investigative targets but the records of those who were connected—at the time of any query in the program's nine-year history—by one, two, or three degrees with those targets. *See* PCLOB, *Report on the Telephone Records Program Conducted under Section 215 of the USA PATRIOT Act and on the Operations of the Foreign Intelligence Surveillance Court* 29–31, 164 (Jan. 23, 2014). Indeed, the PCLOB estimated in January 2014 that one database housing query results contained 120 million records. *See id.* The government does not say

that it intends to purge this second set of records, and its careful language—including its use of the phrase "historical metadata"—suggests that it does not.[1]

In short, this case is not moot now, and the government has not established that it will become moot at a definite point in the future. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993) ("If a party to an appeal suggests that the controversy has, since the rendering of judgment below, become moot, that party bears the burden of coming forward with the subsequent events that have produced that alleged result."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 170 (2000) ("[A] defendant claiming that its voluntary compliance moots a case bears a formidable burden.").

## II. The call-records program is illegal.

As Plaintiffs have explained, the Court's earlier analysis of the legality of the program still holds because the statutory text on which the program is based now is *exactly* the same text that this Court held does not permit it. Nothing in the relevant text has changed, and the government has not claimed otherwise.

The government focuses primarily on the legislative history of the USA Freedom Act, *see* Gov't Suppl. Br. 6–9, but the text of section 1861 is

---

[1] The second set of records would include the records housed in the "corporate store" described in past FISC orders, *see* JA136, but the government almost certainly stores query results in other repositories as well.

4

unambiguous, and accordingly that text governs. *See* Pl. Mot. 9 (citing cases); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then . . . 'judicial inquiry is complete.'" (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981))). In any event, the legislative history is inconclusive. While the government points to statements by three senators who apparently believed that leaving undisturbed the "relevance" language for 180 days would permit bulk collection to continue, the committee report on the bill declared the opposite, stating that "Congress' decision to leave in place the 'relevance' standard for Section 501 orders should *not* be construed as Congress' intent to ratify the FISA Court's interpretation of that term." H. Rep. No. 114-109, at 18–19 (2015) (emphasis added).

When the government does move beyond cherry-picked legislative history, it largely ignores the actual statutory text at issue—that is, the text of section 1861—and focuses instead on the USA Freedom Act's structure. *See* Gov't Suppl. Br. 9–10. The structure of an act generally cannot overcome its plain meaning. *See, e.g.*, *Natural Res. Def. Council v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) (resort to "statutory structure" permitted if the statute "is ambiguous"). Even if it could, the Act's structure does not aid the government's cause.

The government claims that Congress's decision to delay the effective date of Sections 101–103 of the Act evidences Congress's intent to permit bulk

5

collection during the six-month transition period, *see* Gov't Suppl. Br. 9, and that those sections would otherwise be superfluous, *see id.* at 10. As Plaintiffs previously explained, this does not follow. *See* Pl. Mot. 12 n.5. Congress enacted the USA Freedom Act as a legislative response to the FISC's misinterpretation of section 1861. Congress clearly intended Sections 101–103 of the Act to overhaul section 1861 and to create a sturdier barrier against bulk collection than the "relevance" standard had provided. In other words, Sections 101–103 are best understood as Congress's effort to ensure that bulk collection would end no matter how courts ultimately understood the concept of "relevance."

Congress likely delayed the reforms in Sections 101–103 not, as the government claims, to allow bulk collection to continue during the transition period, but to ensure that the government would have time to adjust to a new application process for *targeted* demands. Indeed, in May 2015, as it became clear that Section 215 of the Patriot Act would expire, the government itself shifted tactics from defending bulk collection to defending the apparently myriad other uses of Section 215. *See id.* The government claimed that these other uses were critical, and it asked Congress not to disturb them.[2]

---

[2] *See* James Comey, Dir., Fed. Bureau of Investigation, Remarks at the Georgetown University Law Center's Third Annual Cybersecurity Law Institute (May 20, 2015), http://www.fednews.com/transcript.php?item=560656 ("[W]e use section 215 in individual cases in very important circumstances. . . . If we lose that

6

During the six-month delay, Congress expressly left the authority contained in section 1861 unaltered. *See* USA Freedom Act § 109(b). It did so against the backdrop of this Court's May 2015 decision, which stated that the Court would continue to interpret section 1861 to prohibit bulk collection unless Congress clearly authorized such surveillance. *See* Pl. Mot. 11. It did so after multiple legislators expressed agreement with this Court's decision during the legislative debate. *See id.* And it did so after the House Judiciary Committee stated in its report that nothing in the Act should be interpreted to ratify the FISC's interpretation of relevance. *See id.* at 9.

This legislative structure is not inconsistent with the plain meaning of section 1861. At most, the competing narratives that the parties have advanced demonstrate the futility of attempting to divine meaning from a legislative record

---

authority, which I don't think is controversial with folks, that is a big problem because we will find ourselves in circumstances where we can't use a grand jury subpoena or we can't use a national security letter, unable to obtain information with a court's approval that I think everybody wants us to be able to obtain in individual cases. So that's a problem."); Alex Byers & Kate Tummarello, *What Happens If the PATRIOT Act Expires?*, Politico (May 21, 2015), http://politi.co/1AnFmPz (same).

The revisions to the pen register, trap and trace, and national security letter authorities did not raise similar concerns because those authorities, by their nature, already required something akin to the "specific selection term" called for by the USA Freedom Act. *See, e.g.*, 50 U.S.C. § 1842(d)(2)(A) (requiring court order to specify the "number or other identifier" to be subjected to a pen register or trap and trace). Unsurprisingly, the FBI never complained that the reforms to those authorities would disrupt ongoing investigations.

7

as tangled as this one. Moreover, the government's narrative begs the obvious question: If Congress had wanted to authorize bulk collection during the transition period, why would it not have simply said so?

Finally, if there were any ambiguity in the statutory text, the doctrine of constitutional avoidance would counsel strongly against the government's proposed construction. Adopting the government's construction would require the Court to address the "vexing" constitutional question it avoided in its earlier opinion—specifically, the question of whether the long-term collection and aggregation of Americans' call records can be reconciled with the First and Fourth Amendments. Pl. Mot. 12–13. Plaintiffs have already explained why the answer to that question is clear, but the Court should reject the government's invitation to answer the question unnecessarily.[3]

### III. Preliminary relief is appropriate now.

Given the government's ongoing violation of Plaintiffs' constitutional rights, preliminary relief is warranted. Because the government concedes that this case is not moot, it does not seriously contend that this Court *may* not enter preliminary relief. Rather, the government argues that it *should* not, in deference to Congress.

---

[3] Because Plaintiffs have moved only for preliminary relief, the Court need not resolve these questions definitively in order to rule for Plaintiffs. It would be enough for the Court to conclude that Plaintiffs are "likely" to succeed on the merits. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 487 (2d Cir. 2013).

8

But this argument assumes the conclusion. As explained above, Congress did not intend bulk collection to continue—not even during the transition period. Accordingly, allowing bulk collection to continue could not fairly be described as deferring to Congress. More fundamentally, it would be inappropriate for this Court to defer to Congress given that constitutional rights are at stake. If the government's surveillance violates the First and Fourth Amendments—and it does, *see* Pl. Mot. 12–13 (citing briefs)—it is of no moment that Congress authorized the violations.

The government also obfuscates the narrowness of the relief that Plaintiffs are seeking and the implications of granting that relief. While Plaintiffs' Complaint seeks an injunction against the program—and Plaintiffs intend to ask the district court to enter that relief—at issue here is Plaintiffs' request for *preliminary* relief, which is narrower. Granting this relief would mitigate Plaintiffs' injuries without compromising any legitimate governmental interest. *See* Pl. Mot. 14–15.[4]

Finally, the government suggests that it would be inappropriate for this Court to grant preliminary relief rather than allow the district court to grant it. *See*

---

[4] To be clear, there is no reason to believe that the *final* relief sought would compromise the government's legitimate interests, either. Two governmental review groups have concluded that the program provides no unique investigative benefit that the government could not achieve using targeted demands. *See* Pl. Br. 50–51. And even the government has long-since abandoned its initial claim that the program is necessary to detect terrorists. *See id.* at 51–52.

9

Gov't Suppl. Br. 18–19. This is a red herring. Plaintiffs know of no bar to this Court's issuing the relief that Plaintiffs sought in their Complaint and preliminary-injunction motion. Still, they would have no objection to this Court's instructing the district court to enter the requested relief. The point is that relief is warranted.[5]

## Conclusion

For these reasons, Plaintiffs respectfully request that the Court enter the preliminary relief sought and remand to the district court for expeditious consideration of the proper scope of final relief.

---

[5] Although Plaintiffs have not yet sought the purge of records from the call-records database, the government suggests that Plaintiffs would not be entitled to one, even if the collection were unconstitutional. But the cases the government cites concern either the expungement of the record of a criminal conviction, *see* Gov't Suppl. Br. 15, or the suppression of relevant evidence in an ongoing proceeding, *see id.* at 16. Plaintiffs' suit seeks neither of those things. It seeks the purge of unlawfully obtained records in which the government does not claim any specific investigative interest whatsoever. Plaintiffs are surely entitled to that remedy. *See, e.g.*, *United States v. Ganias*, 755 F.3d 125, 139 (2d Cir. 2014), *reh'g en banc granted*, No. 12-240-cr, 2015 WL 3939426 (2d Cir. June 29, 2015); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1174 (9th Cir. 2010) (en banc) (per curiam); *cf. United States v. David*, 131 F.3d 55, 59 (2d Cir. 1997); *Sovereign News Co. v. United States*, 690 F.2d 569, 578 (6th Cir. 1982).

| | |
|---|---|
| August 6, 2015 | Respectfully submitted, |
| Christopher T. Dunn<br>Arthur N. Eisenberg<br>New York Civil Liberties Union<br>   Foundation<br>125 Broad Street, 19th Floor<br>New York, NY 10004<br>Phone: (212) 607-3300<br>Fax: (212) 607-3318<br>aeisenberg@nyclu.org | /s/ Jameel Jaffer<br>Jameel Jaffer<br>Alex Abdo<br>Patrick Toomey<br>American Civil Liberties Union<br>   Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Phone: (212) 549-2500<br>Fax: (212) 549-2654<br>jjaffer@aclu.org |

11